UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONNIE BOONE,

    Plaintiff,

v.

MATT MACAULEY, *et al.*,

    Defendants.
_____/

Case No. 1:20-cv-10

Hon. Janet T. Neff

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by Ronnie Boone (referred to as "plaintiff" or "Boone"), a prisoner in the custody of the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC). Two defendants remain in this case, Brian Gibson (named as "Unknown Gibson") and Elly Bussinger (named as "Unknown Bussinger"). This matter is now before the Court on defendant Gibson's motion for summary judgment for failure to exhaust administrative remedies (ECF No. 28).[1]

### I.  Plaintiff's claim against defendant Gibson

The Court summarized plaintiff's claims against defendant Gibson as follows:

> Plaintiff is being treated with three or four types of laxatives, which cause him to have up to 10 watery stools a day. On January 12, 2018, Plaintiff defecated on himself due to his medical condition. Plaintiff told his cellmate, prisoner Lankford, to step out of the cell for a few minutes so that he could clean himself. Lankford left the cell and asked Defendant Gibson if he could go to the day room because of Plaintiff's bowel problems. Defendant Gibson ordered Lankford to return to the cell while Plaintiff was still cleaning up and told Lankford would be getting a ticket for being out of place. Because Lankford returned to the cell,

---

[1] The Court notes that defendant unilaterally changed the caption of this lawsuit to *Ronnie Boone v C/O Brian Gibson and C/O Elly Bussinger*". While defendants Macauley, Stieve, Alken, Langdon, Ivens, Gregurek, Simon, Hutchinson, Corizon, Mary Corning, Robinson, Russel, Ritz, Trierweier, Boltom, Valentin, Kevin Corning, Orzula, Youngs, Hull, Athearn, and Sices have been dismissed, they are still named in this lawsuit and the caption of this case.

> Plaintiff attempted to flush his waste and tena pad (for incontinence) down the toilet, which clogged the toilet. Because the toilet will only flush once per hour, Plaintiff was unable to attempt flushing it again immediately and was forced to stay in the cell with a toilet full of waste.
>
> Plaintiff attempted to discuss his medical condition with Defendant Gibson, but he refused to allow Plaintiff a reasonable accommodation so that he could attend prison programs. In addition, Plaintiff states that the denial of the ability to flush his toilet more than once per hour exposes him and his cellmate to dangerous toxins rising off the feces and urine in the standing water. In addition, Plaintiff states that there have been regular incidents during which he was forced to change his incontinence briefs and clean himself in front of his cellmate. Plaintiff states that there are other occasions during which he has to "disimpact" his feces and, because he does not have a private cell, he must do that in front of his cellmate.

Opinion (ECF No. 13, PageID.665-666). Plaintiff claims that defendant Gibson violated his 8th Amendment rights by subjecting him to unconstitutional conditions of confinement. *Id*. at PageID.688. The Court found that plaintiff's 8th Amendment claims against Gibson were not clearly frivolous and survived initial screening of the complaint. *Id*. at PageID.691 693.

## II.    Defendant Gibson's motion for summary judgment

### A.    Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

2

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.     Lack of Exhaustion

#### 1.     Exhaustion requirement

Defendant Gibson contends that plaintiff failed to exhaust the claims alleged against him. The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and

3

other applicable procedural rules. *Id*. at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id*. at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id*. at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id*. at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id*. at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id*. at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id*. at ¶ FF.

### 3.    Discussion

Based on the record before the Court, the only relevant grievance which Boone filed was IBC 18-01-0249-28C ("249"). *See* MDOC Prisoner Step III Grievance Report ("Grievance Report") (ECF No. 29-3, PageID.773-779); Grievance 249 (ECF No. 29-3,

4

PageID.788-793). This grievance involved Boone's January 12, 2018 defecation problems as set forth in his complaint. *See* Grievance 249, PageID.791, 793. Boone did not write out his grievance on the Step I form. Rather, Boone set out his claims in a typewritten attachment. *Id*. at PageID.793. Boone's grievance addressed the January 12, 2018 incident involving defendant Gibson, as well as other incidents related to his medical condition. *Id*. In a grievance rejection letter, former defendant Grievance Coordinator M. Robinson stated:

> Your Step I grievance regarding MULTIPLE ISSUES was received in this office on 1/18/2018 and was rejected for the following reason:
>
> Your grievance is being returned to you without processing for the reason that you are in violation of PD-03.02.130. This procedure states that you must limit your grievance to one (1) issue per grievance. You have included more than one (1) issue as prescribed in this procedure. Grievance denied at first step.

Grievance 249 at PageID.792 (boldface type omitted). The MDOC upheld the rejection at Steps II and III. *Id*. at PageID.788, 790.

In his response, Boone contends that his grievance was "egregiously rejected" for containing "multiple claims" and that the standard for rejection under PD 03.02.130 is that a grievance includes "multiple unrelated claims." Plaintiff's Response (ECF No. 35, PageID.831). Boone contends that his grievance "and all issues mentioned in his grievance pertained to one issue, Plaintiff receiving lack of accommodation for his medical condition as provided by MDOC Policy Directive P.D. 03.04.100" [Health Services]. *Id*.

In addressing plaintiff's claim that the MDOC improperly rejected Grievance 249, the Court looks to PD 03.02.130 ¶ G, which provides in pertinent part:

> G.  Prisoners and parolees are required to file grievances in a responsible manner. A grievance shall be rejected by the Grievance Coordinator if it contains profanity, threats of physical harm, or language which demeans the character, race, ethnicity, physical appearance, gender, religion, or national origin of any person, unless it is part of the description of the grieved behavior and is essential to that description. A grievance also may be rejected for any of the following reasons:

5

> 1. It is vague, illegible, contains <u>multiple unrelated issues</u>, or raises issues that are duplicative of those raised in another grievance filed by the grievant.

PD 03.02.130 ¶ G1 (emphasis added).

In his reply, Gibson discusses the multiple issues raised in Grievance 249:

> A reasonable reading of Boone's Step I grievance, is that he grieved multiple separate issues. (ECF No. 29-3, PageID.793.) In Boone's "Attempt to Resolve" statement, Boone describes two separate conversations, one with custody staff Corrections Officer Gibson and the other with housing staff Assistant Resident Unit Supervisor Lane. (*Id*.) In Boone's "Problems" statement, he explains his medical condition and then complains about the incidents occurring on January 12, 2018. (*Id*.) Boone then alleges that he has been humiliated by fellow prisoners, that he lacks bio-hazard bags, that he has nowhere to wash his clothing, and that he has limited access to a flushing toilet. (*Id*.) Last, Boone claims that he had been excluded from services, programs, or activities; or discriminated against on account of his disability. (ECF No. 29-3, PageID.793.) Boone's Step I grievance can therefore be construed as grieving multiple issues.

Defendant's Reply (ECF No. 36, PageID.846-847).

While Gibson has provided a reasonable construction of Boone's grievance, he cites no authority to support the reasons given for rejecting the grievance. Under the PD 03.02.130 ¶ G1, a grievance may be rejected for including multiple <u>unrelated</u> issues. Neither the Step I rejection nor Gibson cite procedural requirements which prevent a prisoner from including "multiple issues" in a grievance or that a prisoner "must limit your grievance to one (1) issue per grievance." In rejecting the grievance, the grievance coordinator simply cited PD 03.02.130, without referring to which of the 40 paragraphs in that policy directive (A through NN) allows rejection based on "multiple issues" or limits a prisoner to one issue per grievance. *See* PD 03.02.130 (ECF No. 29-2).

In his reply brief, Gibson contends that Boone failed to contest the rejection, citing an unpublished order in *Jones v. Boneville*, No. 11-2242 (6th Cir. March 30, 2012) (ECF No. 36-1). In *Jones*, the court stated in pertinent part that, "[a]s the district court concluded, Jones's

6

argument that his grievances were improperly rejected should have been made during the grievance process, not in his present civil rights action." *Id*. at PageID.853-854.  Unlike *Jones*, plaintiff's Step II and Step III appeals referred to the distinction between his multiple related issues and the policy directive which addressed rejection for multiple unrelated issues.  Grievance 249 at PageID.789.

Here, the MDOC's stated reasons for rejecting Grievance 249, *i.e.*, the grievance contained "multiple issues" and violated the "one (1) issue per grievance" rule, are not set out in the policy directive.  In short, the MDOC did not follow its own rules in rejecting Boone's grievance.  The Sixth Circuit addressed this situation in *Risher v. Lappin*, 639 F.3d 236 (6th Cir. 2011):

> In *Woodford*, the Supreme Court noted that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." 548 U.S. at 90-91, 126 S.Ct. 2378. That case required an *inmate* to comply with agency deadlines and other "critical procedural rules" in order to properly exhaust administrative remedies. *Id*. at 95, 126 S.Ct. 2378. When pro se inmates are required to follow agency procedures to the letter in order to preserve their federal claims, we see no reason to exempt the agency from similar compliance with its own rules.

*Risher*, 639 F.3d at 241 (emphasis in original).

The MDOC's improper rejection of Grievance 249 effectively prevented Boone from resolving his problem through the grievance system. *See Jones*, 549 U.S. at 204 ("exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court").  Based on this record, Boone's efforts were sufficient to properly exhaust his 8th Amendment claim against defendant Gibson. *See, e.g., Risher*, 639 F.3d at 240 (administrative remedies are exhausted when prison officials fail to file a

timely response to a grievance as required under the prison's grievance procedure).  For this reason, Gibson's motion for summary judgment should be denied.

### IV. Recommendation

Accordingly, I respectfully recommend that defendant Gibson's motion for summary judgment (ECF No. 28) be **DENIED** and that Boone's Grievance 249 be construed as properly exhausting his 8th Amendment claim alleged against Gibson.

Dated:  November 16, 2021                               /s/ Ray Kent
                                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).